**United States Bankruptcy Court**
**District of New Jersey**
Mitchell H. Cohen U.S. Courthouse
P.O. Box 2067
Camden, New Jersey 08101

**JUDITH H. WIZMUR**  (856) 757-5126
Chief, U.S. Bankruptcy Judge

October 7, 2011

Richard Minteer, Esq.
131 Bridgeboro Street
Riverside, New Jersey 08075

David Paul Daniels, Esq.
3300 Federal Street
Camden, New Jersey 08105

> **FILED**
> JAMES J. WALDRON, CLERK
> October 7, 2011
> U.S. BANKRUPTCY COURT
> CAMDEN, N.J.
> BY: s/ Theresa O'Brien, Judicial
> Assistant to Chief Judge Wizmur

Re:  Ruth Allen
     Case No. 11-27569
     **LETTER OPINION**

Dear Counsel:

In this matter, the creditor E. Daniel Snyder seeks relief from the stay to return to state court to enforce certain provisions of the Final Judgment of Divorce entered in the divorce action initiated by the debtor. The debtor moves to reclassify Mr. Snyder's claim from a priority claim to a general unsecured claim.

## FACTS

The debtor, Ruth Allen, filed a Chapter 13 petition on June 7, 2011. Prior to the filing of the petition, Ms. Allen and her ex-husband, Mr. E. Daniel Snyder, were granted a divorce by the Superior Court of New Jersey, Chancery Division, Camden County, on March 22, 2011. The divorce judgment states

1

that Ms. Allen will not pay Mr. Snyder support or alimony of any nature for any period of time. Allen v. Snyder, No. FM-04-1230-10 (N.J. Super. Ct. Ch. Div. Mar. 22, 2011). By way of equitable distribution, Mr. Snyder was awarded $50,876.74 as his equitable share of the debtor's ING account, and $21,932, representing 25% of the value of the debtor's GMAC 401(k) Plan and SEP IRA Plan. Because the debtor had dissipated both the GMAC 401(k) account and money invested in an ING account prior to the entry of the Final Judgment,[1] the court entered a judgment against the debtor and in favor of Mr. Snyder in the amount of $72,808.74, which, according to the Final Judgment, represented Mr. Snyder's "equitable share of the ING account" and his "equitable distribution" of the debtor's GMAC 401(k) Plan and SEP IRA Plan. Ms. Allen was ordered to maintain a life insurance policy, naming Mr. Snyder as beneficiary, for $70,000 "to guarantee payment of the equitable distribution award set forth herein." Id. at 4.

On June 26, 2007, Mr. Snyder filed a proof of claim for $72,808.74, listing the claim as a priority on the ground that it is a domestic support obligation under §§ 507(a)(1). On August 1, 2011, Ms. Allen filed a motion to reclassify Mr. Snyder's claim from a priority claim to a general unsecured claim, asserting that the claim is not a domestic support obligation entitled to priority status under 11 U.S.C. § 507(a)(1). Ms. Allen sought to reclassify Mr.

---

[1] I assume as well that the debtor's SEP IRA account was also dissipated prior to the entry of the Final Judgment.

2

Snyder's claim as general unsecured. On August 9, 2011, Mr. Snyder filed a motion for relief from the stay, seeking to return to state court to enforce certain provisions of the Final Judgment.

## **DISCUSSION**

1. Status of Mr. Snyder's Money Judgment Claim.

The debtor correctly contends that Mr. Snyder's claim cannot be characterized as a domestic support obligation ("DSO"). In pertinent part, a DSO is defined in the Bankruptcy Code as a debt that is "in the nature of alimony, maintenance or support . . . of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is so designated." 11 U.S.C. § 101(14A). The Final Judgment specifically reflected that the debtor was not responsible to pay her ex-spouse "any spousal support or alimony of any nature or kind for any period of time." At 2. Rather, the Final Judgment labeled the award entered in favor of Mr. Snyder as in the nature of equitable distribution. [2] It is recognized that courts must consider not only the language of a property settlement, but also the intent of the parties manifest in their financial circumstances at the time of the settlement and the "the function served by the obligation at the time of the divorce or

---

[2] Mr. Snyder's counsel acknowledges that the "$50,876.74 . . . appears to be an unsecured equitable distribution payment." (Daniels's Cert. ¶ 3, 8/5/2011).

3

settlement," In re Gianakas, 917 F.3d 759, 762-63 (3d Cir. 1990). However, neither party has provided any evidence that refutes the clear articulation in the Final Judgment that the award to Mr. Snyder represented the distribution of the marital estate, and was not for alimony or maintenance. Because Mr. Snyder's claim is not a DSO, it has no priority among claims under 11 U.S.C. § 507(a)(1). It is a general unsecured claim of a type described § 523(a)(15),[3] and is dischargeable upon the successful completion of the Chapter 13 plan. 11 U.S.C. § 1328(a). See ALAN N. RESNICK & HENRY J. SOMMER, 8 COLLIER ON BANKRUPTCY ¶ 1328.02[2] (16th ed. 2011); In re Phegley, 443 B.R. 154, 157 (8th Cir. B.A.P. 2011) (§ 523(a)(15) claims are dischargeable in a Chapter 13).

    2.    Status of Payments from Debtor's Retirement Plan to Mr. Snyder.

The Final Judgment of Divorce directed that Mr. Snyder

> shall receive $69.50 per month from the Plaintiff's GMAC Defined Benefit Retirement Plan which was acquired during the term of the marriage effective, March 1, 2011. A Qualified Domestic Relations Order shall be prepared.

---

[3] Section 523(a)(15) provides:

> To a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit.

11 U.S.C. § 523(a)(15).

Since the entry of a Final Judgment, the debtor has failed to prepare a Qualified Domestic Relations Order, asserting that she does not have the funds needed to pay the legal fees for the preparation of the order, but expressing a willingness to comply with the directive to pay the $69.50 per month to Mr. Snyder from the retirement fund.

In a prior letter opinion, this court held that a constructive trust is imposed, under New Jersey law, when a party holds possession of property awarded to an ex-spouse through a divorce judgment that equitably distributes martial property. In re Trout, No. 05-19591, 2006 WL 4452826, *3 (Bankr. D.N.J. Feb. 1, 2006). Prior bankruptcy cases in this jurisdiction have reached the same conclusion. See In re Giberson, 260 B.R. 78, 81-82 (Bankr. D.N.J. 2001); In re DeLauro, 207 B.R. 412, 415 (Bankr. D.N.J. 1997). In addition, Trout relied on Evans v. Evans, a New Jersey state case which held that a constructive trust was imposed when a divorce judgment provided for equitable distribution of a 401(k) plan; therefore, the ex-husband's subsequent bankruptcy did not discharge the ex-wife's share of the 401(k) plan. 347 N.J. Super. 139, 142-43, 788 A.2d 949, 950-51 (Ch. Div. 2001). Courts in other jurisdictions have also come to the conclusion that, when a state court judgment exists dividing marital property, the spouse that is in possession of that property holds it in constructive trust for the other spouse. See, e.g. In re McCafferty, 96 F.3d 192, 198-99 (6th Cir. 1996)(state court judgment issued in Ohio); In re Combs, 435 B.R. 467, 478-79 (E.D. Mich. 2010); In re Forant, 331

B.R. 151, 159-160 (Bankr. D. Vt. 2004); Resare v. Resare, 154 B.R. 399, 401 (Bankr. D.R.I. 1993); In re Reider, 177 B.R. 412, 419 (Bankr. D. Me. 1994). Cf. In re Phillips, 104 B.R. 499 (Bankr. S.D. Fla. 1989)(property awarded to spouse in divorce judgment is not property of the estate).  But see In re Atherton, 193 F.3d 519 (5th Cir. 1999) (determining marital property distribution dischargeable debt without considering whether property awarded to non-debtor spouse was property of the estate); In re Halverson, 151 B.R. 358, 363 (M.D.N.C. 1993) (North Carolina law did not allow imposition of constructive trust for equitably distributed property when title had not changed hands).

Property held in constructive trust for another is not property of the estate under § 541(d).  11 U.S.C. § 541(d); In re Columbia Gas Sys., Inc., 997 F.2d 1039, 1059 (3d Cir. 1993).  Therefore, Mr. Snyder's right to receive monthly payments from the debtor's retirement plan is not a claim against the debtor's bankruptcy estate, and is preserved notwithstanding the bankruptcy. Mr. Snyder is afforded relief from the stay to enforce his right to receive these payments in state court.

    3.    Status of the Debtor's Life Insurance Obligation.

In a Chapter 13 bankruptcy case, "as soon as practicable after completion by the debtor of all payments under the plan . . . the court shall

grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title." 11 U.S.C. § 1328(a). Chapter 13, then, provides for the discharge of debts and a debt is defined as "liability on a claim." 11 U.S.C. § 101(12). A claim is defined as:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.

The intent of Congress in selecting these terms was to "adopt the broadest available definition of "claim." Johnson v. Home State Bank, 501 U.S. 78, 83, 111 S. Ct. 2150, 2154, 115 L.Ed.2d 66 (1991). A right to payment is, then, "'nothing more nor less than an enforceable obligation . . . .'" Id. (quoting Pennsylvania Dept. of Public Welfare v. Davenport, 495 U.S. 552, 559, 110 S. Ct. 2126, 2131, 109 L.Ed.2d 588 (1990)).

In this case, there is no doubt that Mr. Snyder may enforce the obligation of Ms. Allen to purchase, and pay premiums for, life insurance. It makes no difference that Ms. Allen is required to pay not Mr. Snyder but an unascertained insurance company. See, e.g., In re Cross, 218 B.R. 76, 78-79 (9th Cir. B.A.P. 1998) (S.E.C. can enforce payments to a receiver); In re Wodark, 425 B.R. 834, 838-39 (spouse can enforce payments for jointly held credit card debt as required by divorce settlement) (10th Cir. B.A.P. 2010); In re Gibson, 219 B.R. 195, 205 (6th Cir. B.A.P. 1998) (obligation to pay a note as stipulated

7

to in a divorce agreement is a claim under § 101(5)(A)). Because Mr. Snyder has the ability to enforce Ms. Allen's obligation to make a payment in the form of life insurance premiums, he has a claim under § 101(5)(A). Like the money judgment claim held by Mr. Snyder, the claim is a general unsecured claim which is dischargeable upon successful completion of the debtor's Chapter 13 plan.

## CONCLUSION

The debtor's motion to reclassify Mr. Snyder's claim as a general unsecured claim is granted. Mr. Snyder's motion to have relief from the automatic stay to enforce the terms of the Final Judgment of Divorce authorizing him to receive a monthly payment from the GMAC Defined Benefit Retirement Plan is granted, but his quest for relief from the stay to enforce his claims, otherwise provided for in the Final Judgment, is denied.

Plaintiff's counsel shall submit a form of order in conformance herewith.

Dated: October 7, 2011

_____
JUDITH H. WIZMUR
CHIEF JUDGE
U.S. BANKRUPTCY COURT