# United States Bankruptcy Court

### District of New Jersey
#### Mitchell H. Cohen U.S. Courthouse
#### P.O. Box 2067
#### Camden, New Jersey   08101

**JUDITH H. WIZMUR**
Chief, U.S. Bankruptcy Judge

(856) 757-5126

October 17, 2011

Richard Minteer, Esq.
131 Bridgeboro Street
Riverside, New Jersey 08075

David Paul Daniels, Esq.
3300 Federal Street
Camden, New Jersey  08105

**FILED**

JAMES J. WALDRON, CLERK

October 17, 2011

U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY:  s/ Theresa O'Brien, Judicial
Assistant to Chief Judge Wizmur

Re:  Ruth Allen
Case No. 11-27569
**AMENDED LETTER OPINION**

Dear Counsel:

In this matter, the creditor E. Daniel Snyder seeks relief from the stay to return to state court to enforce certain provisions of the Final Judgment of Divorce entered in the divorce action initiated by the debtor.  The debtor moves to reclassify Mr. Snyder's claim from a priority claim to a general unsecured claim.

## FACTS

The debtor, Ruth Allen, filed a Chapter 13 petition on June 7, 2011. Prior to the filing of the petition, Ms. Allen and her ex-husband, Mr. E. Daniel Snyder, were granted a divorce by the Superior Court of New Jersey, Chancery Division, Camden County, on March 22, 2011.  The divorce judgment states

that Ms. Allen will not pay Mr. Snyder support or alimony of any nature for any

period of time.  Allen v. Snyder, No. FM-04-1230-10 (N.J. Super. Ct. Ch. Div.

Mar. 22, 2011).  By way of equitable distribution, Mr. Snyder was awarded

$50,876.74 as his equitable share of the debtor's ING account, and $21,932,

representing 25% of the value of the debtor's GMAC 401(k) Plan and SEP IRA

Plan.  Because the debtor had dissipated both the GMAC 401(k) account and

money invested in an ING account prior to the entry of the Final Judgment,[1]

the court entered a judgment against the debtor and in favor of Mr. Snyder in

the amount of $72,808.74, which, according to the Final Judgment,

represented Mr. Snyder's "equitable share of the ING account" and his

"equitable distribution" of the debtor's GMAC 401(k) Plan and SEP IRA Plan.

Ms. Allen was ordered to maintain a life insurance policy, naming Mr. Snyder

as beneficiary, for $70,000 "to guarantee payment of the equitable distribution

award set forth herein."  Id. at 4.


On June 26, 2007, Mr. Snyder filed a proof of claim for $72,808.74,

listing the claim as a priority on the ground that it is a domestic support

obligation under §§ 507(a)(1).  On August 1, 2011, Ms. Allen filed a motion to

reclassify Mr. Snyder's claim from a priority claim to a general unsecured

claim, asserting that the claim is not a domestic support obligation entitled to

priority status under 11 U.S.C. § 507(a)(1).  Ms. Allen sought to reclassify Mr.

---

[1]  I assume as well that the debtor's SEP IRA account was also dissipated
prior to the entry of the Final Judgment.

Snyder's claim as general unsecured.  On August 9, 2011, Mr. Snyder filed a

motion for relief from the stay, seeking to return to state court to enforce

certain provisions of the Final Judgment.

## **DISCUSSION**

1.    Status of Mr. Snyder's Money Judgment Claim.

The debtor correctly contends that Mr. Snyder's claim cannot be

characterized as a domestic support obligation ("DSO").  In pertinent part, a

DSO is defined in the Bankruptcy Code as a debt that is "in the nature of

alimony, maintenance or support . . . of such spouse, former spouse, or child

of the debtor or such child's parent, without regard to whether such debt is so

designated."  11 U.S.C. § 101(14A).  The Final Judgment specifically reflected

that the debtor was not responsible to pay her ex-spouse "any spousal support

or alimony of any nature or kind for any period of time."  Amended Dual Final

Judgment of Divorce at 2.  Rather, the Final Judgment labeled the award

entered in favor of Mr. Snyder as in the nature of equitable distribution.[2]  It is

recognized that courts must consider not only the language of a property

settlement, but also the intent of the parties as manifested in their financial

circumstances at the time of the settlement and "the function served by the

---

[2]  Mr. Snyder's counsel acknowledges that the "$50,876.74 . . . appears
to be an unsecured equitable distribution payment." (Daniels's Cert. ¶ 3,
8/5/2011).

3

obligation at the time of the divorce or settlement," In re Gianakas, 917 F.2d

759, 763 (3d Cir. 1990).  However, neither party has provided any evidence

that refutes the clear articulation in the Final Judgment that the award to Mr.

Snyder represented the distribution of the marital estate, and was not intended

as alimony or maintenance.  Because Mr. Snyder's claim is not a DSO, it has

no priority among claims under 11 U.S.C. § 507(a)(1).  It is a general unsecured

claim of a type described § 523(a)(15),[3] and is dischargeable upon the

successful completion of the Chapter 13 plan.  11 U.S.C. § 1328(a).  See Alan

N. Resnick & Henry J. Sommer, 8 Collier on Bankruptcy ¶ 1328.02[2][g] at

1328-17 (16th ed. 2011); In re Phegley, 443 B.R. 154, 157 (8th Cir. B.A.P. 2011)

(§ 523(a)(15) claims are dischargeable in a Chapter 13).


        2.      Status of Payments from Debtor's Retirement Plan to Mr. Snyder.


        The Final Judgment of Divorce directed that Mr. Snyder

        shall receive $69.50 per month from the Plaintiff's GMAC Defined
        Benefit Retirement Plan which was acquired during the term of the
        marriage effective, March 1, 2011.  A Qualified Domestic Relations
        Order shall be prepared.

───────────────
        [3]  Section 523(a)(15) provides that a discharge under section 1328(b)
does not discharge a debt:

        to a spouse, former spouse, or child of the debtor and not of the
        kind described in paragraph (5) that is incurred by the debtor in
        the course of a divorce or separation or in connection with a
        separation agreement, divorce decree or other order of a court of
        record, or a determination made in accordance with State or
        territorial law by a governmental unit.

11 U.S.C. § 523(a)(15).

4

Since the entry of a Final Judgment, the debtor has failed to prepare a

Qualified Domestic Relations Order, asserting that she does not have the funds

needed to pay the legal fees for the preparation of the order, but expressing a

willingness to comply with the directive to pay the $69.50 per month to Mr.

Snyder from the retirement fund.

In a prior letter opinion, this court held that a constructive trust is

imposed, under New Jersey law, when a party holds possession of property

awarded to an ex-spouse through a divorce judgment that equitably distributes

martial property.  In re Trout, No. 05-19591, 2006 WL 4452826, *3 (Bankr.

D.N.J. Feb. 1, 2006).  Prior bankruptcy cases in this jurisdiction have reached

the same conclusion.  See In re Giberson, 260 B.R. 78, 81-82 (Bankr. D.N.J.

2001); In re DeLauro, 207 B.R. 412, 415 (Bankr. D.N.J. 1997).  In addition,

Trout relied on Evans v. Evans, a New Jersey state case which held that a

constructive trust was imposed when a divorce judgment provided for equitable

distribution of a 401(k) plan; therefore, the ex-husband's subsequent

bankruptcy did not discharge the ex-wife's share of the 401(k) plan.  347 N.J.

Super. 139, 142-43, 788 A.2d 949, 950-51 (Ch. Div. 2001).  Courts in other

jurisdictions have also come to the conclusion that, when a state court

judgment exists dividing marital property, the spouse that is in possession of

that property holds it in constructive trust for the other spouse.  See, e.g. In re

McCafferty, 96 F.3d 192, 198-99 (6th Cir. 1996)(state court judgment issued in

Ohio); Resare v. Resare, 154 B.R. 399, 401 (D.R.I. 1993); In re Combs, 435

5

B.R. 467, 478-79 (Bankr. E.D. Mich. 2010); In re Forant, 331 B.R. 151, 159-160 (Bankr. D. Vt. 2004); In re Reider, 177 B.R. 412, 419 (Bankr. D. Me. 1994). Cf. In re Phillips, 104 B.R. 499 (Bankr. S.D. Fla. 1989)(property awarded to spouse in divorce judgment is not property of the estate).  But see In re Atherton, 193 F.3d 519, 1999 WL 707898 (5th Cir. 1999) (determining marital property distribution to be a dischargeable debt without considering whether property awarded to the non-debtor spouse was property of the estate); In re Halverson, 151 B.R. 358, 363 (M.D.N.C. 1993) (North Carolina law did not allow imposition of constructive trust for equitably distributed property when title had not changed hands).

Property held in constructive trust for another is not property of the estate under § 541(d).  11 U.S.C. § 541(d); In re Columbia Gas Sys., Inc., 997 F.2d 1039, 1059 (3d Cir. 1993), cert. denied, 510 U.S. 1110, 114 S. Ct. 1051, 127 L.Ed.2d 372 (1994).  Therefore, Mr. Snyder's right to receive monthly payments from the debtor's retirement plan is not a claim against the debtor's bankruptcy estate, and is preserved notwithstanding the bankruptcy.  Mr. Snyder is afforded relief from the stay to enforce his right to receive these payments in state court.

3.      <u>Status of the Debtor's Life Insurance Obligation</u>.


In a Chapter 13 bankruptcy case, "as soon as practicable after

completion by the debtor of all payments under the plan . . . the court shall

grant the debtor a discharge of all debts provided for by the plan or disallowed

under section 502 of this title." 11 U.S.C. § 1328(a). Chapter 13, then,

provides for the discharge of debts and a debt is defined as "liability on a

claim." 11 U.S.C. § 101(12). A claim is defined in part as a:

> right to payment, whether or not such right is reduced to
> judgment, liquidated, unliquidated, fixed, contingent, matured,
> unmatured, disputed, undisputed, legal, equitable, secured, or
> unsecured.

11 U.S.C. § 101(5)(A).


The intent of Congress in selecting these terms was to "adopt the

broadest available definition of 'claim.'" <u>Johnson v. Home State Bank</u>, 501 U.S.

78, 83, 111 S. Ct. 2150, 2154, 115 L.Ed.2d 66 (1991). A right to payment is,

then, "'nothing more nor less than an enforceable obligation.'" <u>Id.</u> (quoting

<u>Pennsylvania Dept. of Public Welfare v. Davenport</u>, 495 U.S. 552, 559, 110 S.

Ct. 2126, 2131, 109 L.Ed.2d 588 (1990)).


In this case, there is no doubt that Mr. Snyder may enforce the obligation

of Ms. Allen to purchase, and pay premiums for, life insurance. It makes no

difference that Ms. Allen is required to pay not Mr. Snyder but an

unascertained insurance company.  See, e.g., In re Wodark, 425 B.R. 834, 838-39 (10th Cir. B.A.P. 2010) (spouse can enforce payments for jointly held credit card debt as required by divorce settlement); In re Gibson, 219 B.R. 195, 205 (6th Cir. B.A.P. 1998) (obligation to pay a note as stipulated to in a divorce agreement is a claim under § 101(5)(A)); In re Cross, 218 B.R. 76, 78-79 (9th Cir. B.A.P. 1998) (S.E.C. can enforce payments to a receiver).  Because Mr. Snyder has the ability to enforce Ms. Allen's obligation to make a payment in the form of life insurance premiums, he has a claim under § 101(5)(A).   Like the money judgment claim held by Mr. Snyder, the claim is a general unsecured claim which is dischargeable upon successful completion of the debtor's Chapter 13 plan.

## **CONCLUSION**

The debtor's motion to reclassify Mr. Snyder's claim as a general unsecured claim is granted.  Mr. Snyder's motion to have relief from the automatic stay to enforce the terms of the Final Judgment of Divorce authorizing him to receive a monthly payment from the GMAC Defined Benefit Retirement Plan is granted, but his quest for relief from the stay to enforce his claims, otherwise provided for in the Final Judgment, is denied.

Plaintiff's counsel shall submit a form of order in conformance herewith.

Dated:    October 17, 2011

_____
JUDITH H. WIZMUR
CHIEF JUDGE
U.S. BANKRUPTCY COURT